UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

UNITED STATES OF AMERICA,                    Case No. 22-CV-1225 (PJS/TNL)

            Plaintiff,

v.                                                                    ORDER

RONALD E. BYERS, DEANNA L. BYERS,
and HENNEPIN COUNTY, MINNESOTA,

            Defendants.

---

Elizabeth Kirby, UNITED STATES DEPARTMENT OF JUSTICE, TAX DIVISION, for plaintiff.

Todd R. Iliff, TODD R. ILIFF, PA, for defendants Ronald E. Byers and Deanna L. Byers.

Defendant Ronald E. Byers ("Ronald") owes the United States hundreds of thousands of dollars in back taxes. The government would like to satisfy part of Ronald's tax debt through a judicial sale of his home, which he alone owns but which he shares with his wife, defendant Deanna L. Byers ("Deanna"). Ronald and Deanna agree that the government has the right to sell the home, but they argue that, following the sale, Deanna will be entitled to half of the proceeds. The government disagrees.

This matter is before the Court on the parties' cross-motions for summary judgment. For the reasons explained below, the Court grants the motion of the United States and denies the motion of Ronald and Deanna.

I. BACKGROUND

Ronald owes the United States $327,419.11 for unpaid income taxes, interest, and penalties.  *See* Joint Statement of Undisputed Material Facts ("SUMF") ¶ 6, ECF No. 36. The United States made multiple tax assessments against Ronald, and, as a result, multiple federal tax liens attached to his property interests, including his interest in the real property located at 16808 Prospect Place in Wayzata, Minnesota (the "Wayzata Property").  *See id.* ¶ 14; *see also* 26 U.S.C. §§ 6321, 6322.  The United States brought this action under 26 U.S.C. § 7403 to reduce Ronald's tax assessments to judgment and to enforce its liens by way of a judicial sale of the Wayzata Property.  *See* Compl. ¶¶ 9–36, ECF No. 1.  Pursuant to § 7403(b), the United States named two other defendants who may claim an interest in the Wayzata Property:  Deanna and Hennepin County.[1]  *See id.* ¶¶ 7–8.

Ronald is the sole titleholder to the Wayzata Property, *see* SUMF ¶ 7–8, which Hennepin County classifies as a homestead.  *See* SUMF Ex. 1, ECF No. 36-1.  Ronald acquired the property in June 1990, about two years before he married Deanna.  *See*

---

[1]Hennepin County and the United States have stipulated that any lien interest that the County has in the Wayzata Property as a result of unpaid property taxes is superior under 26 U.S.C. § 6323(b)(6) to the lien interest that the United States has in the property as a result of unpaid income taxes.  The parties have also agreed that the County can be excused from participating in this litigation until the Wayzata Property is sold, at which point the County must prove the amount of its interest.  *See* Stipulation ¶¶ 3, 7, ECF No. 14.  As a result, the County has not taken a position on the pending motions or otherwise participated in these proceedings.

SUMF ¶¶ 9, 12.  The parties agree that Deanna is not liable for any of the delinquent taxes.  *See id.* ¶ 13.  In February 1994, Ronald and Deanna together executed a new mortgage on the Wayzata Property in the amount of $59,932, which paid off the existing mortgage.  *See id.* ¶¶ 19–22.  According to Ronald, he and Deanna contributed equally to payments on the new mortgage until the mortgage was retired in 2009.  *See* Byers Aff. ¶¶ 6–7, ECF No. 41.  At all times, however, title to the Wayzata Property has remained solely in Ronald's name.

The parties have filed cross-motions for summary judgment.  The United States seeks a judicial sale of the Wayzata Property, with the proceeds of the sale to be distributed to it (minus the value of any interest proven by Hennepin County at the time of sale).  *See* United States Mot. Summ. J. 1–2, ECF No. 33.  Meanwhile, Ronald and Deanna ask the Court to distribute 50% of the proceeds of the sale of the Wayzata Property to Deanna.  *See* Defs.' Mot. Summ. J. 1–2, ECF No. 39.

## II. ANALYSIS

### A. Standard of Review

Summary  judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Here, the evidence submitted by the parties consists of a Joint Statement of Undisputed Facts, *see* ECF No. 36, and the unrebutted affidavit of

Ronald, *see* ECF No. 41.  In the absence of a dispute of fact, the Court will draw "all justifiable inferences" in favor of the non-moving party when evaluating each party's motion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### B. Proceeds of Judicial Sale

Under the Internal Revenue Code, if a taxpayer fails to pay delinquent taxes as demanded by the government, a lien arises "in favor of the United States upon all property and rights to property, whether real or personal, belonging to [the taxpayer]." 26 U.S.C. § 6321.  The government can then enforce its lien by suing under § 7403, which "authorizes a federal district court to order a sale of property in which a delinquent taxpayer has an interest in order to satisfy that taxpayer's debt."  *United States v. Bierbrauer*, 936 F.2d 373, 374 (8th Cir. 1991); *see* 26 U.S.C. § 7403(c) (providing that a court "may decree a sale of [the taxpayer's] property . . . and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States").  A court may order a judicial sale under § 7403 "even though an innocent third party also has an interest in the property, so long as the third party receives compensation."  *Bierbrauer*, 936 F.2d at 374 (citing *United States v. Rodgers*, 461 U.S. 677, 693–94 (1983)).[2]

---

[2]In addition, while "[f]oreclosure and forced sale, with proceeds of the sale divided equitably between the United States and other parties claiming an interest in the property, will normally be the proper resolution of a § 7403 action," *United States v.*
(continued...)

The parties agree that the United States is entitled to reduce Ronald's delinquent-tax assessment to judgment, and they agree that the Court should order a judicial sale of the Wayzata Property to (at least partially) satisfy Ronald's tax debts.  *See* SUMF ¶ 16. What the parties dispute is who is entitled to the proceeds of that sale.  The United States argues that it is entitled to all of the proceeds of the sale, while Deanna argues that she is entitled to at least half of the proceeds.  To be clear:  Deanna does not argue that she can block the sale or that she holds an interest in the Wayzata Property as a joint tenant or as a tenant in common (the only joint interests in real property recognized in Minnesota, *see* Minn. Stat. § 500.19 subd. 1).  Instead, Deanna argues that she is entitled to half of the proceeds from the sale of the Wayzata Property.

Deanna's reasoning is convoluted.  Deanna starts by pointing to Minn. Stat. § 507.02, which provides in relevant part:  "If the owner is married, no conveyance of the homestead . . . shall be valid without the signatures of both spouses."  Deanna then points to *Marshall v. Marshall*, 921 F. Supp. 641, 644 (D. Minn. 1995), in which the Court explained that § 507.02 does not "create an 'exemption' from a creditor's ability to levy upon the homestead," but instead "alters the very nature of one spouse's property right

---

[2](...continued)
*Barczyk*, 434 Fed. App'x 488, 490 (6th Cir. 2011), courts have "limited equitable discretion" to protect an innocent third-party's interests by blocking the sale.  *United States v. Rodgers*, 461 U.S. 677, 709–11 (1983) (describing "fairly limited set of considerations" for blocking judicial sale under § 7403).  Deanna does not argue that the Court should exercise this limited discretion here, though.

in the homestead."  Deanna interprets *Marshall* to mean that § 507.02 "operates to create present, vested, and inalienable property rights in a homestead for a spouse of the owner thereof."  Defs.' Mem. Supp. Summ. J. 6.

Deanna next assumes—without any explanation—that the "property right" created by § 507.02 is a marital property interest.  Deanna then points out that a different statute—one that is irrelevant to this action—refers to "any inchoate, contingent, or marital property right or interest" in real property.  *See* Minn. Stat. § 507.03 (describing circumstances in which one spouse "shall not be entitled to any inchoate, contingent, or marital property right or interest" in real property purchased by the other spouse).   According to Deanna, this means that a "marital property right" (such as her purported interest in the Wayzata Property) must be different from (and more substantial than) an "inchoate" or "contingent" interest; otherwise, the statute would not have separately listed "marital property right."

What, then, is this "marital property interest" that Deanna claims to have acquired in the Wayzata Property?  To answer that question, Deanna leaps to Minn. Stat. § 518.003, subd. 3b, which defines "marital property" for purposes of Minnesota's marriage dissolution statutes as "property, real or personal . . . acquired by the parties, or either of them, to a dissolution, legal separation, or annulment proceeding at any time during the existence of the marriage relation between them . . . but prior to the date

of valuation under section 518.58, subdivision 1." *Id.*  In her briefing, however, Deanna omits the clause that makes clear that this statute applies only to property owned by the parties to a divorce proceeding.  *See* Defs.' Mem. Supp. Summ. J. 9.

As Deanna would have it, then, § 507.02 gives her a marital property interest in the Wayzata Property, and if the United States sells that property, it must compensate her for that interest.  How much?  Well, to measure the value of the "marital property interest" purportedly created by § 507.02, Deanna again relies on Minnesota's marriage-dissolution laws.  Section 518.58, subd. 1 requires that a state judge presiding over a divorce proceeding "make a just and equitable division of [] marital property" by taking into consideration "all relevant factors including the length of the marriage, any prior marriage of a party, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, needs, opportunity for future acquisition of capital assets, and income of each party."  The state judge is also directed to "consider the contribution of each [party to the divorce proceeding] in the acquisition, preservation, depreciation or appreciation in the amount or value of the marital property, as well as the contribution of a spouse as a homemaker."  *Id.*

Finally, Deanna argues that if this Court were to divide the couple's property in the same way that a state court would divide the couple's property if they were getting divorced, this Court would conclude that Deanna was entitled to half ("if not more") of

the proceeds of the judicial sale of the Wayzata Property.  Defs.' Mem. Supp. Summ. J.

14.  In support of her argument, Deanna cites only two of the § 518.58 factors: the length

of her marriage to Ronald and the use of marital assets to pay the new mortgage on the

Wayzata Property.  Deanna completely ignores all of the other factors that a court

would have to consider.

There are many problems with this Rube Goldberg contraption of an argument.

The most critical problem is that § 507.02 does not, in fact, create a "marital property

interest" that is compensable under § 7403.  *Marshall* is correct that § 507.02 "alters the

very nature of one spouse's property right in the homestead."  921 F. Supp. at 644; *see

also O'Hagan v. United States*, 86 F.3d 776, 782 (8th Cir. 1996) (noting that § 507.02

"actually defines the nature of the property interest itself (i.e., that it is inalienable

without the consent of the other spouse)").  But the "one spouse" to which *Marshall*

refers is a spouse who *owns* the home—i.e., a spouse who *has* a "property right in the

homestead."  *Marshall*, 921 F. Supp. at 644; *see also O'Hagan*, 86 F.3d at 780 (explaining

that, under § 507.02, "spouses *who own homestead property* . . . are prohibited from

conveying their interest, except to the other spouse, without the other spouse's consent"

(emphasis added)).

Hence, in this case § 507.02 alters *Ronald's* property interest in the homestead by

forbidding him from conveying that interest without the approval of his spouse.

Deanna, by contrast, does not *have* a property interest that can be altered by § 507.02.

And by limiting the property right of a spouse who owns the homestead, § 507.02 does

not somehow create a property right in a spouse who does *not* own the homestead.

In arguing to the contrary, Deanna points again to *Marshall*—this time to the

following passage:

> Minnesota's homestead law was enacted to create a property
> interest which could not be conveyed without consent of
> both spouses.  To hold that one spouse could deprive the
> other spouse of this interest by recording a deed after having
> unilaterally and wrongfully sold the homestead would
> defeat this purpose.

*Marshall*, 921 F. Supp. at 646 (citation omitted).

When that passage is read in context, however, it is clear that *Marshall* is not

saying that § 507.02 gives a spouse who does not own the homestead an ownership

interest in that homestead.  To the contrary, *Marshall* addresses the situation in which

both spouses own the property as joint tenants.  *Marshall* is saying (admittedly

inartfully) that § 507.02 takes each (owning) spouse's interest in a homestead which (in

the absence of § 507.02) could be freely conveyed and, by restricting that interest,

"create[s] a property interest which could not be conveyed without the consent of both

spouses."  *Id.*  *Marshall* is certainly not saying that § 507.02 somehow makes an owner

out of a non-owner.

-9-

Deanna has another argument.  According to Deanna, the government cannot acquire an interest in the Wayzata Property greater than that of Ronald.  Deanna further argues that, because Ronald cannot convey his interest in the property without Deanna's consent, if the government does acquire Ronald's interest in the homestead, the government will likewise be unable to convey that interest without Deanna's consent.  In support of her argument, Deanna relies yet again on *Marshall*:[3]

> All parties agree on the general principle to be applied in this case: the government "steps into the shoes" of the delinquent taxpayer when it acquires a tax lien.  *See United States v. National Bank of Commerce*, 472 U.S. 713, 724 (1985) (citations omitted).  Accordingly, in a levy proceeding, the "IRS acquires whatever rights the taxpayer himself possesses" in the homestead property.  *Id.*; *Thomson v. United States*, 66 F.3d 160, 162 (8th Cir. 1995) ("[t]he IRS acquires by its lien and levy no greater right to property than the taxpayer himself has at the time the tax lien arises") (citing cases); *Gardner v. United States*, 34 F.3d 985, 988 (10th Cir. 1994) ("the tax collector not only steps into the taxpayer's shoes but must go barefoot if the shoes wear out") (quotation omitted). The parties also agree that, in applying the Internal Revenue Code, state law defines the nature of the taxpayer's interest in the homestead property. . . . In order to determine the interest the IRS acquired by its lien, the Court must first consider the nature and extent of the property right Mr. Marshall had in the Homestead at the time of the lien.

[3]At this point, it may be worth mentioning that the *Marshall* decision on which Deanna relies so heavily was vacated, would not be binding even if it had not been vacated, and has been cited by only two courts in almost 30 years.  It is not terribly compelling authority.

-10-

*Marshall*, 921 F. Supp. at 643–44.

Once again, Deanna has wrenched language from *Marshall* out of context.

*Marshall* involved a challenge to an attempt by the United States to enforce a lien

"pursuant to the administrative procedures set out in 26 U.S.C. § 6331."  *Id.* at 642–43.

In such a proceeding, the government does indeed "'step[] into the shoes' of the

delinquent taxpayer" and "'acquire[] whatever rights the taxpayer himself possesses' in

the homestead property." *Id.* at 643 (quoting *Nat'l Bank of Com.*, 472 U.S. at 725).  That is

why the *Marshall* court focused on how § 507.02 modified the "shoes" into which the

government had stepped, and why the *Marshall* court ultimately found that the

government had not acquired the right to convey the levied property without the non-

delinquent spouse's consent.  *See* 921 F. Supp. at 645–46.

Here, however, the government has not proceeded *administratively* under § 6331,

but *judicially* under § 7403.  The United States Supreme Court has emphasized "the

important distinction between the power of sale under § 7403 . . . and the power of

administrative levy [under § 6331] . . . ."  *United States v. Rodgers*, 461 U.S. 677, 702 n.31

(1983).  *Marshall* itself noted the difference:

> Several courts have held that the IRS may levy upon and sell
> a nondelinquent spouse's portion of the homestead,
> notwithstanding statutory provisions to the contrary, using
> the *judicial proceeding* called for under 26 U.S.C. § 7403.  *See*
> *United States v. Rodgers*, 461 U.S. 677, 103 S.Ct. 2132, 76
> L.Ed.2d 236 (1983).  The IRS did not pursue a judicial

> proceeding to levy on Mr. Marshall's property.  The cases
> upon which it relies to justify sale at issue today involve
> judicial levies under § 7403, not administrative levies under
> § 6331.

*Marshall*, 921 F. Supp. at 645 n.4.[4]

In a judicial proceeding under § 7403, the government satisfies its lien not by

directly acquiring the delinquent taxpayer's encumbered property (as it does in an

administrative proceeding under § 6331), but instead by receiving the proceeds from a

judicial sale of that property "according to the findings of the court in respect to the

interests of the parties and of the United States."  26 U.S.C. § 7403(c); *see also Rodgers*, 461

U.S. at 692 ("[I]n this context at least, the right to collect and the right to seek a forced

sale are two quite different things.").  A § 7403 sale involves "not merely the sale of the

delinquent taxpayer's own interest, but the sale of the entire property . . . and the

recognition of third-party interests through the mechanism of judicial valuation and

distribution."  *Rodgers*, 461 U.S. at 694.

In short, it does not matter here (as it did in *Marshall* and *O'Hagan*) whether the

property interest to which the government's lien has attached includes the right to

unilaterally convey the property.  Section 7403 gives the Court the authority to sell the

---

[4]*O'Hagan* also involved an administrative procedure under § 6331, and not a
judicial sale under § 7403.  *See O'Hagan*, 86 F.3d at 784 ("We do not express any opinion
as to the likely outcome of a judicial lien foreclosure proceeding under section 7403 of
the IRC.").

entire property and distribute the proceeds.[5]  The only question is whether Deanna

holds an interest in the Wayzata Property that is "the sort of property interest for whose

loss an innocent third-party must be compensated."  *Id.* at 698.  For the reasons already

explained, she does not.

Even if § 507.02 did create a property interest of some type for Deanna, that right

would not be the kind of *vested* right that triggers the right to compensation under

§ 7403(c).  In this respect, the Court agrees with *United States v. Pilla* that only vested

property rights must be compensated following a judicial sale under § 7403, and that

"Minnesota's homestead laws do not provide the spouse with a vested estate in the

property."  No. 3-76-196, No. 3-82-96, 1986 WL 1498301, at *4 (D. Minn. 1986), *aff'd* 808

F.2d 841 (8th Cir. 1986).

In Minnesota, "the word 'vested' has a well-understood meanin[g].  It is used to

define an estate either present or future, the title to which has become established in

some person or persons *and is no longer subject to any contingency*."  *Snortum v. Snortum,*

---

[5]For this reason, the Court also rejects any notion that § 507.02 gives Deanna the
right to block the judicial sale of the Wayzata Property.  Justice Blackmun pitched a
similar notion in *United States v. Rodgers*, 461 U.S. 677, 729 (1983) (Blackmun, J.,
concurring in part and dissenting in part) ("Because I conclude that Congress did not
intend § 7403 to permit federal courts to grant property rights to the Government
greater than those enjoyed by the tax debtor, I would hold that the Government may
not sell Mrs. Rodgers' homestead without her consent."), but the majority flatly rejected
it.  *See, e.g., id.* at 702 ("Whatever property rights attach to a homestead under Texas law
are adequately discharged by the payment of compensation, and no further deference
to state law is required, either by § 7403 or by the Constitution.").

193 N.W. 304, 305–06 (Minn. 1923) (emphasis added).  The contingent nature of any right created by § 507.02 is plain from the face of the statute, which begins:  "*If* the owner is married . . . ."  Minn. Stat. § 507.02 (emphasis added).  As Deanna conceded at oral argument, any right that is afforded to her by § 507.02 would disappear the moment her marriage to Ronald ended by death or divorce.  Hence, even if § 507.02 created some kind of interest in the Wayzata Property for Deanna, that right would clearly be contingent, and thus not vested, and thus not compensable under § 7403.

To further illustrate the point:  Suppose that it was Deanna (and not Ronald) who owed back taxes.  If that were true, whatever right that § 507.02 gives her in the Wayzata Property would almost certainly not constitute "property" or a "right[] to property" to which a tax lien could attach pursuant to § 6321.  As the Supreme Court has recognized, the language of § 6321 "aims to reach every species of right or interest protected by law *and having an exchangeable value*."  *Drye v. United States*, 528 U.S. 49, 56 (1999) (emphasis added) (cleaned up).  This latter limitation on what constitutes "property" under § 6321 was discussed in *United States v. Bess*, 357 U.S. 51 (1958), in which the Court held that a tax lien could attach to the cash-surrender value of a delinquent taxpayer's life-insurance policy (which could "be borrowed against, assigned or pledged," *id.* at 56), but not to the face amount of the policy, which the taxpayer could never personally receive (because the payout of the face amount would

be triggered by his death).  *Id.* at 55–56.  The Supreme Court explained that, for

something to be "property" or a "right to property" to which a tax lien could attach

under § 6321, that something must "have pecuniary value and [be] transferable." *Drye*,

528 U.S. at 60 (quoting *Drye Family 1995 Tr. v. United States*, 152 F.3d 892, 895 (8th Cir.

1998)).

Here, Deanna has cited nothing that suggests that her ability to block Ronald

from selling the Wayzata Property has "exchangeable" or "pecuniary" value, *id.* at 56,

60, is "transferable," *id.* at 60, or could "be borrowed against, assigned or pledged."

*Bess*, 357 U.S. at 56.  Deanna's ability to prevent Ronald from conveying the couple's

home is uniquely personal; it can be exercised only by someone who is married to

Ronald.  *See* Minn. Stat. § 507.02 (declaring conveyances of homestead property invalid

"without the signatures of both *spouses*") (emphasis added).  And thus, that authority

would have no value to anyone but Deanna.

If Deanna were the delinquent taxpayer, then, the government would have no

claim to her right to block Ronald from selling the Wayzata Property without her

consent.  Because that right would not be considered property or a right to property for

purposes of § 6321, no tax lien could attach to that right.  It would be extremely odd,

then, if that same right would be deemed an interest for which Deanna must be

compensated following a judicial sale of the Wayzata Property under § 7403.

-15-

For the sake of completeness, the Court makes one final observation: Even if the Court is incorrect—and even if Deanna has a vested interest in the Wayzata Property for which she must be compensated following a judicial sale under § 7403—Deanna's proposed procedure for valuing that interest is unworkable. Again, Deanna would have this Court use the same factors that a state court must use in deciding how to divide property between two divorcing spouses. *See* Minn. Stat. § 518.58 subd. 1. The Court would have to consider such factors as Ronald's and Deanna's "age, health, . . . occupation, amount and sources of income, vocational skills, employability, . . . and income ," *id.*, all of which can change at any moment. The value of Deanna's supposedly vested property interest—and thus the amount of the proceeds that would be left for the government following a judicial sale of the Wayzata Property—could fluctuate from day to day based on Ronald's or Deanna's health or job status.[6] This may be the best available option for dividing up assets in a divorce proceeding, but it is not a sensible way for a court to "finally determine the merits of all claims to and liens upon the property." 26 U.S.C. § 7403.[7]

---

[6]The Court does not understand why Deanna believes that she is entitled to exactly 50% of the proceeds of the sale of the Wayzata Property, as she has discussed almost none of the § 518.58 factors. The Court has no idea, for example, if either Ronald or Deanna is employed, or if either or both are in good health, or even how old they are.

[7]The Court denies Ronald and Deanna's request to delay the sale of the Wayzata Property for 180 days. Because they have not opposed the sale of the Wayzata

(continued...)

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1.     Plaintiff's motion for summary judgment [ECF No. 33] is GRANTED.

2.     Defendant Ronald E. Byers is liable to the United States in the amount of

$327,491.11, plus further interest and other statutory additions accruing

after March 17, 2023, until the judgment is fully paid, for his outstanding

federal income tax liabilities for tax years 1999, 2000, 2001, 2002, 2003,

2004, and 2005, and penalties imposed under 26 U.S.C. § 6673.

3.     The United States has valid and subsisting federal tax liens that attached

to all property and rights to property of Ronald E. Byers, including his

interest in the real property located at 16808 Prospect Place, Wayzata,

Minnesota 55391 ("the Wayzata Property").  The Wayzata Property is

more particularly described as:

> That part of the abandoned 100 foot right of
> way of the Chicago, Milwaukee & St. Paul
> Railway Co., lying between the West line of
> Lot 7, Block 11, and East line of Lot 6, Block 11,
> Thorpe Bros. Groveland Shores, Hennepin

---

[7](...continued)
Property, Ronald and Deanna have known that they will have to move, and they have
had ample time to search for new housing since this lawsuit was filed almost a year and
a half ago.

County, Minn. extended across said right of
way all in Section 17, Township 117, North
Range 22, West of the 5th Principal Meridian.

4.    The United States' federal tax liens are enforced against the Wayzata

Property.

5.    The United States is authorized to sell the Wayzata Property and, within

60 days of this Order and Judgment, must file a proposed Order of Sale to

govern the sale of the Wayzata Property.

6.    Deanna L. Byers has no property interest in the Wayzata Property, and

thus is not entitled to any portion of the sales proceeds.

7.    The net proceeds from the sale of the Wayzata Property shall be applied to

satisfy, in part, Ronald Byers's unpaid federal tax liabilities described

above, subject to any proven lien priority interest of Hennepin County,

Minnesota.

8.    Defendants' motion for summary judgment [ECF No. 39] is DENIED.

Dated:  October 23, 2023                     s/Patrick J. Schiltz
                                             Patrick J. Schiltz, Chief Judge
                                             United States District Court

-18-